UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                         :

AL-FATAH S. STEWART,                 :

                                     :

          Plaintiff,         :        <u>OPINION & ORDER</u>

                                     :

-against-                     :       11 Civ. 2184 (HB)

                                     :

BRIAN FISHER, COMMISSIONER OF THE   :
DEPARTMENT OF CORRECTIONS;       :
GOVERNOR ANDREW CUOMO; ANTHONY  :
ANNUCCI, DEPUTY COMMISSIONER OF   :
DEPARTMENT OF CORRECTIONS;       :
FREDERICK BERNSTEIN, M.D., CHIEF    :
MEDICAL OFFICER OF GREEN HAVEN C.F.; :
ERNIE MARTONE, REGIONAL HEALTH   :
SERVICES ADMINISTRATOR; FREDERICK :
BERNSTEIN, M.D., FACILITY HEALTH    :
SERVICES DIRECTOR; BETSY KELLY, R.N., :
NURSE ADMINISTRATOR; DEPUTY      :
SUPERINTENDENT KOSKOWSKI; DEPUTY  :
SUPERINTENDENT L. FRANCO; DEPUTY   :
SUPERINTENDENT D. CUNNINGHAM;    :
DEPUTY SUPERINTENDENT S. BRANDOW;  :
LT. T. GOTSCH ; SGT. K. O'CONNOR;    :
CORRECTIONAL OFFICER R. COLLINS;   :
CORRECTIONAL OFFICER HESS, G-H BLOCK :
YARD TOWER OFFICER ON THE 3 PM TO   :
11 PM SHIFT ON FEBRUARY 4, 2011;     :
CORRECTIONAL OFFICER COFFEY,     :
E-BLOCK #6 COMPANY OFFICER ON THE  :
3 PM TO 11 PM SHIFT ON FEBRUARY 4, 2011; :
CORRECTIONAL OFFICER COFFEY,     :
E-BLOCK #6 COMPANY OFFICER ON THE  :
3 PM TO 11 PM SHIFT ON FEBRUARY 28,  :
2011; REGISTERED NURSE RICHARD BURNS; :
DR. CHAKRAVORTY; DR. BENTIVEGNA,  :
INDIVIDUALLY AND IN THEIR OWN    :
OFFICIAL CAPACITY,           :

                                     :

          Defendants.       :

                                     :

-------------------------------------------------------------X

**HAROLD BAER, JR., United States District Judge:**

Plaintiff Al-Fatah Stewart ("Plaintiff" or "Stewart"), proceeding *pro se*, brings this action under 42 U.S.C. § 1983, against New York State Department of Correctional Services Commissioner Brian Fischer, Governor Andrew Cuomo, Deputy Commissioner Anthony Annucci, Chief Medical Officer Frederick Bernstein, Regional Health Services Administrator Ernie Martone, Nurse Administrator Betsy Kelly, Deputy Superintendent of Security Koskowski, Deputy Superintendent L. Franco, Deputy Superintendent D. Cunningham, Deputy Superintendent S. Brandow, Lt. T. Gotsch, Sgt. K. O'Connor, Correctional Officer R. Collins, Correctional Officer Hess, Correctional Officer Coffey, Registered Nurse Richard Burns, Dr. Chakravorty and Dr. Bentivegna (collectively "Defendants").   Plaintiff alleges that Defendants (1) failed to protect him from harm from other prisoners and (2) denied him adequate medical care for his injuries in violation of his rights under the Eighth Amendment.   Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For the reasons set forth below, Defendants' motion is granted in part and denied in part.   Plaintiff's motion for a preliminary injunction is denied.

## I.   FACTUAL BACKGROUND

The following facts are taken from Plaintiff's amended complaint and are assumed to be true for the purposes of this motion to dismiss.   Plaintiff, a prisoner in the custody of the New York Department of Correctional Services ("DOCS"), alleges that on February 4, 2011, while incarcerated at Green Haven Correctional Facility, he went to the recreation yard and was "brutally stabbed" by another prisoner with an "ice pick type weapon" that went completely through his forearm.   Am. Compl. ¶ 23.   Plaintiff claims that while he was attempting to fend off any further attacks from the prisoner, the tower officer yelled to "break it up."   *Id.* ¶ 24   Plaintiff went to the exit door to get medical care for his injured arm but was told by the correctional officers behind the door that he could come in early or he could go back in at 8pm.   *Id.* ¶25.   Because the prisoner who had assaulted him stood by the exit door, Plaintiff decided to stand under the guard tower until the yard closed to avoid walking by his assailant.   *Id.* ¶¶ 26-27.

Plaintiff alleges that when he got back to his cell block, he informed the gallery officer that he had been stabbed.   *Id.* ¶ 28.   After asking Plaintiff where he had been stabbed, the gallery officer stated "you'll live, my shift is almost over, if I have to stay here to do paperwork, you'll

really get hurt.   Go lock in."   *Id.* ¶ 29.   Plaintiff went to his cell that Friday evening and stayed there until Sunday afternoon when his injured arm became so painful that he went to the yard to get medical help.   *Id.* ¶ 31.   There, he told some prisoners that he was "hurt bad" and about half an hour later he was directed over the loud speaker to report back to his cell block.   *Id.* ¶ 32.

Plaintiff was met by Sgt. O'Connor who asked him in front of other prisoners if he had been stabbed.   *Id.* ¶ 33.   Plaintiff, who did not want to be labeled a snitch, stated "not here." Sgt. O'Connor took Plaintiff to an empty room, directed him to strip down to his boxer shorts and inspected the injury.   *Id.* ¶¶ 35-36.   Sgt. O'Connor asked Plaintiff if he knew the identity of his stabber and he stated that he knew the prisoner by face but not by name.   Sgt. O'Connor replied "Bullshit," told Plaintiff to get dressed and escorted him to the clinic.   *Id*. ¶ 37.

At the clinic, Nurse Burns asked Plaintiff if he knew what lock jaw was and when Plaintiff indicated yes, Sgt. O'Connor stated "well if you don't tell me who stabbed you, you won't get no medical treatment because when metal passes through flesh, it's a good chance you'll get lock jaw."   Am. Compl. ¶¶ 38-39.   When Plaintiff indicated that he didn't know the stabber, Sgt. O'Connor stated "play it your way, I'm writing you a Tier II misbehavior report for not reporting an injury and you'll get 30 days keeplock and if you don't come clean with me by then, we'll see how you fair when you get off keeplock."   *Id.* ¶ 41.   Plaintiff was escorted back to his cell without any medical attention.   *Id.* ¶ 42.   On February 9, 2011, Sgt. O'Connor issued to Plaintiff a misbehavior report, and on February 12, 2011, after a hearing, Lt. Gotsch issued a sanction of 30 days keeplock.   *Id.* ¶¶ 43-48.

On February 28, 2011, while Plaintiff was confined to keeplock, Officer Coffey opened his cell and Plaintiff was "viciously stabbed" in the shoulder and stomach by another prisoner.   *Id.* ¶ 50.   Plaintiff sustained an injury to his right knee while attempting to defend himself.   *Id.* ¶ 52. He was escorted to the clinic where the medical staff did not treat his injured knee instead telling him that he should not have been fighting.   *Id.*   Plaintiff was placed under involuntary protective custody and later issued a misbehavior report for fighting and violent conduct.   *Id.* ¶¶ 53-55.

## II.   PROCEDURAL HISTORY

Plaintiff filed his original complaint on March 24, 2011, alleging that Defendants were deliberately indifferent to his safety and his medical needs by failing to protect him from harm and denying him adequate medical care for his injuries.   Plaintiff subsequently filed an order to show

cause for a preliminary injunction, on May 13, 2011, Defendants filed an opposition to Plaintiff's motion for a preliminary injunction, and on June 1, 2011, Plaintiff filed a reply to the opposition. Plaintiff filed an amended complaint on June 13, 2011, providing the names of the John Doe Defendants.   On September 30, 2011, Defendants filed a motion to dismiss the amended complaint, on October 7, 2011, Plaintiff submitted his opposition, on October 21, 2011, Defendants filed a reply and on November 2, 2011, Plaintiff filed a surreply.

## III.    DISCUSSION

### A.    Motion for a Preliminary Injunction

Plaintiff's motion for a preliminary injunction to obtain physical therapy and an MRI must be denied.    To obtain a preliminary injunction, "the moving party must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits of their case or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in its favor."   *MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143 (2d Cir. 2004) (internal citation and quotation marks omitted).

Plaintiff moved for a preliminary injunction seeking physical therapy and an MRI to evaluate further his injured arm and knee so that treatment could be prescribed.[1]   The Court referred the matter to Magistrate Judge Theodore Katz who held a conference on October 11, 2011, at which time Plaintiff confirmed that he was getting satisfactory treatment for both his arm and knee but indicated that he would still like an MRI to prove that he had sustained a knife wound. By letter dated October 11, 2011, Plaintiff requests a ruling on his motion for a preliminary injunction and again seeks an MRI for his arm to prove that he had been stabbed.   Plaintiff also

---

[1]   By letter dated June 30, 2011, the Court directed Plaintiff to provide updates of his medical care and noted that the Assistant Attorney General was inquiring into the medical care he was receiving.   The court also stated that if in the coming weeks Plaintiff felt that he was not being provided the required care, a conference would be scheduled to determine how to proceed.   Plaintiff subsequently submitted several letters to the Court asserting that he was still not receiving adequate medical care for his injured arm and knee.   By letter dated July 27, 2011, however, Plaintiff stated that he had received x-ray results for his knee and was examined by a doctor who had scheduled him to undergo physical therapy for his knee and occupational therapy for his hand.   By letter dated August 12, 2011, Plaintiff indicated that he was receiving physical therapy for his knee but had been denied occupational therapy for his arm and hand and that after so long without treatment he suffered pain and discomfort in the arm.   He was scheduled, however, to see a specialist to determine a course of treatment.   By letter dated September 16, 2011, Plaintiff stated that he had seen a nurse practitioner who prescribed Norontin, a nerve pain drug, for his arm, and scheduled him to see a physiatrist for possibly more invasive treatment.   He also stated that he had to complete one more session of physical therapy for his knee and then was told that an MRI and surgery for the knee would be scheduled.

4

represents to the Court that his request for an MRI should be granted because other prisoners are likely to suffer similar harm and it would provide evidence to support his claim of deliberate indifference to his medical needs.

Plaintiff's request for injunctive relief is denied as moot because he no longer faces an actual and imminent threat arising from Defendants' alleged failure to provide adequate medical care for his arm and knee.   Plaintiff has informed the Court that he is receiving treatment for his arm and knee.   His contention that his motion for an MRI should be granted to prevent potential violation of other prisoners' rights and to provide evidence to support his claims are attenuated and speculative and insufficient to satisfy the standard necessary for an injunction.   Because Plaintiff is not under threat of suffering an irreparable harm his motion for a preliminary injunction is denied as moot.

Furthermore, to the extent he seeks injunctive relief directed at officials at Green Haven, Plaintiff's request for injunctive relief is also moot because he is no longer incarcerated at that facility.   Generally, a prisoner's transfer from a facility moots claims for declaratory and injunctive relief against officials of that facility.   *See Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006); *Prins v. Coughlin*, 76 F.3d 504 (2d Cir. 1996).   Plaintiff was transferred to Auburn Correctional Facility and is currently incarcerated at Wende Correctional Facility.   Because Plaintiff obtained the medical treatment he sought and is no longer incarcerated at Green Haven, his motion for a preliminary injunction is denied as moot.

**B.     Motion to Dismiss**

**1.     Legal Standard**

A complaint must be dismissed under Rule 12(b)(6) if plaintiff fails to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   To survive dismissal on this ground, a claimant must plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 1950.   Moreover, because Plaintiff is proceeding *pro se*, the Court must liberally construe his

pleadings and interpret them to raise the strongest arguments they suggest.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in the non-movant's favor, *Roth v. Jennings*, 489 F.3d 499, 504 (2d Cir. 2007).

Defendants' motion to dismiss identifies two principle reasons why the amended complaint should be dismissed: (1) Plaintiff fails to state a cognizable claim for relief under 42 U.S.C. § 1983; and (2) thirteen Defendants were not personally involved in the alleged violations.

### 2.    Section 1983 Claims

Section 1983 provides relief for a plaintiff deprived of "rights, privileges, or immunities secured by the Constitution and its laws."   42 U.S.C.   1983.   The statute is not itself a source of substantive rights, but rather a mechanism for vindicating federal rights elsewhere conferred by the Constitution and federal statutes.   *See Campbell v. City of New York*, No. 06 Civ. 4743 (HB), 2010 WL 2720589, at *6 (S.D.N.Y. June 30, 2010) (citations omitted).   To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### a.    Failure to Protect

Under the Eight Amendment prison officials are required to take reasonable measures to guarantee the safety of prisoners.   *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   This duty includes an obligation to protect prisoners from harm caused by other prisoners.   *Id.* at 833.   "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability."   *Id.* at 834.   To state a cognizable § 1983 claim for failure to protect, a prisoner must show that: (1) he is incarcerated under conditions "posing a substantial risk of serious harm"; and (2) prison officials acted with "deliberate indifference" to his safety.   *Id.*; *see Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996).   A plaintiff can establish deliberate indifference by showing that a corrections officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Farmer*, 511 U.S. at 837.   "[A] prison official has sufficient culpable intent if he has

knowledge that an inmate faces a substantial serious risk of serious harm and disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citation omitted).

Plaintiff alleges that prison officials at Green Haven acted with deliberate indifference to his safety by: (i) failing to protect him from the attack on February 4, 2011; and (ii) failing to place him in protective custody once they became aware of his injuries from the attack, resulting in another attack on February 28, 2011.   Defendants argue that Plaintiff fails to allege plausible facts showing that prison officials knew of and disregarded a substantial risk of serious harm.

Defendants contend that neither Plaintiff nor prison officials were specifically aware that Plaintiff was at risk of serious danger or harm on February 4, 2011.   They argue that no one had advance knowledge that an attack would occur, Plaintiff had no fear of being assaulted prior to the attack and could not identify the inmate who assaulted him.   Defendants claim that because they had no specific knowledge that Plaintiff was at "substantial risk," they could not take measures to prevent the attacks.   *See* Def. Mem. at 9, 11, 13; Def. Reply at 2-3, 6-7.

Plaintiff's allegations "as to the level and type of previous violence in the yard" and that the incidents were "serious and similar enough to put defendants on notice of the substantial risk of danger" may be sufficient to establish that the conditions of his incarceration posed a substantial risk of serious harm.   *Warren v. Goord*, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007).   Plaintiff's amended complaint fails, however, to allege facts from which the Court can reasonably infer that Defendants acted with a sufficiently culpable state of mind with respect to the February 4, 2011 incident.   Plaintiff fails to allege facts indicating that Defendants had knowledge of a personal risk to him, such as a previous threat or attack, and disregarded that risk by failing to take reasonable measure to protect his safety.   *See Fernandez v. New York City Dep't of Corr.*, No. 08 Civ. 4294 (KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) ("Absent clear notice of a risk of harm to the prisoner, '[c]ourts routinely deny deliberate indifference claims based upon surprise attacks.") (quoting *Zimmerman v. Macomber*, No. 95 Civ. 882, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001).   Viewing the facts in the light most favorable to Plaintiff as I must, his allegations at most suggest that Defendants were negligent for failing to use additional safety measures in the recreation yard.   A prisoner's claim, however, that prison officials were negligent by failing to protect him from injury by another prisoner does not rise to the level of deliberate indifference

7

actionable under the Eighth Amendment.   *See Farmer*, 511 U.S. at 838 ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment"); *see also Hayes*, 84 F.3d at 620; *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 28 (2d Cir. 1988).

Plaintiff's allegations with respect to the attack on February 28, 2011, however, are sufficient to state a plausible claim of failure to protect.   He alleges that after the February 4, 2011, prison officials were sufficiently aware that he was at risk of substantial harm and that they should have placed him in protective custody because he was in "imminent danger" since his attacker had not been apprehended as mandated by DOCS policy and rules.   Am. Compl. ¶¶ 47-49; Pl's Opp. at 6, 16, 24.   Instead, Plaintiff was placed in keeplock where his cell was opened by Officer Collins, who presumably looked on while Plaintiff was attacked by another prisoner for the second time.   Am. Compl. ¶ 49; Pl. Opp. at 7, 23.   Plaintiff alleges that his placement in keeplock, the failure to follow proper protocol for those in keeplock and the opening of his cell were all a set up for him to be murdered.   Pl. Opp. at 21-23.   Defendants again contend that Plaintiff fails to allege a plausible claim that prison officials failed to protect him from harm. Defendants claim that they could not apprehend Plaintiff's assailant because Plaintiff did not identify him and that Plaintiff does not allege that prison officials knew that he would be assaulted. Def. Mem. at 9, 11-12; Def. Reply at 2, 6-7.   Defendants characterize Plaintiff's claim that he was set up to be murdered as "outlandish."   Def. Reply at 8.

Leaving aside the "set up to be murdered claim," Plaintiff's allegations show at the very least that prison officials knew of a substantial risk prior to the February 28, 2011 attack and failed to take reasonable measures to abate the harm.   *See Warren*, 476 F. Supp. 2d at 412 (prisoner states a deliberate indifference claim when prison officials who were allegedly aware of a substantial risk to the prisoner's safety did nothing to remedy the situation).   The prior attack on February 4, 2011, coupled with the failure to apprehend his assailant provided actual notice to Defendants that a threat to Plaintiff existed.   Arguably, the placement of Plaintiff in keeplock after his Tier II disciplinary hearing instead of protective custody and the opening of his cell suggest that Defendant disregarded the risk to Plaintiff of substantial harm.   If, as Plaintiff claims, there exists a DOCS policy to place a prisoner who had been previously attacked in involuntary protective custody, Defendants' failure to follow that policy would "entail[] something more than

mere negligence." *Farmer*, 511 U.S. at 835.

Plaintiff has alleged sufficient facts to show that Officer Hess, Sgt. O'Connor, Lt. Gotsch, Officer Collins and Deputy Superintendent Koskowski were deliberately indifferent to Plaintiff's safety, and therefore the failure to protect prong of Plaintiff's motion as to those defendants is denied.[2]

### b. Inadequate Medical Care

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id*. at 104.   As in the failure to protect context, to prove deliberate indifference to serious medical needs, a plaintiff must establish: (1) that he had a "sufficiently serious" medical condition and (2) that the official in question had a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *see Farmer*, 511 U.S. 825, 834 (1994); *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).

Under the first prong of the deliberate indifference analysis, Plaintiff must show that his medical condition was "sufficiently serious." *Hathaway*, 37 F.3d at 66.   "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).   Numerous cases, however, have set forth an illustrative list of factors that guide the analysis, including (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment and treatment," (2) whether the medical condition significantly affects daily activities, and (3) whether the plaintiff suffers from "the existence of chronic and substantial pain." *Id*.; *see Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).   The standard contemplates "a condition of urgency" that may "produce death, degeneration or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citation omitted); *Hathaway*, 37 F.3d at 66.   Yet, a prisoner is not required to demonstrate that he "experiences pain that is at the limit of human ability to bear, nor … that his or her condition will degenerate into a life-threatening one." *Brock*, 315 F.3d at 163.

---

[2]  Specifically, Plaintiff contends that Defendant Hess failed to report the February 4, 2011 attack, which might have led to an official investigation and possibly apprehension of his attacker, that Defendants O'Connor, Gotsch and Koskowski were well aware that he was at risk but failed to follow DOCS policy by having him placed in involuntary protective custody, and that Defendant Collins opened his cell door in contravention of keeplock protocols.

For the second prong of the analysis, the plaintiff must demonstrate that each defendant acted with a "sufficiently culpable state of mind," knowing and disregarding an excessive risk to his health and safety.   "Deliberate indifference is 'a state of mind that is the equivalent of criminal recklessness.'"   *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted).   To meet this standard of culpability, a defendant's actions must be more than mere negligence or medical malpractice; rather, the plaintiff must show that the defendants acted with a reckless disregard for the risk presented.   *See Estelle*, 429 U.S. at 106; *Stevens v. Goord*, 535 F. Supp. 2d 373, 384 (S.D.N.Y. 2008).   A plaintiff "need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."   *Farmer*, 511 U.S. at 842-43.

Plaintiff alleges three instances of outright denial or failure to provide medical care in his amended complaint: (1) Officer Coffey's failure to report his stab wound on February 4, 2011, because he was going off duty and did not want to do the paperwork; (2) Nurse Burns's denial of adequate medical attention for his injured arm, which Plaintiff alleges was a hole that went through his entire arm, when he was escorted to the clinic by Sgt. O'Connor on February 6, 2011; and (3) the medical staff's failure to treat his knee injury when he was escorted to the clinic after the assault on February 28, 2011.   Plaintiff also alleges that he was denied medical care by Dr. Chakravorty and Dr. Bentivegna.[3]   Plaintiff claims that he now suffers what he believes to be permanent damage to his arm and knee.[4]   Defendants contend that Plaintiff fails to show that he had objectively serious medical needs and that prison officials acted with deliberate indifference. I can only hope that in this day and age and in this country the Assistant Attorney General makes this allegation tongue in cheek.

Taking Plaintiff's allegations regarding the severity of his injuries as true as I must at this

---

[3]   Plaintiff alleges in his surreply that Defendant Dr. Chakravorty, his assigned health care provider, viewed his wound and denied him medical care on March 9, 2011.   Pl's Surreply at 18.   Although Plaintiff had previously alleged denial of medical care by Dr. Chakravorty, *see* Pl.'s Opp. at 11, this is the first time he provides a specific date. Plaintiff also alleged in his opposition to Defendant's motion to dismiss that Defendant Dr. Bentivegna had denied him treatment.   *See* Pl.'s Opp. at 12.   He now alleges in the surreply that Dr. Bentivega made rounds everyday on the cellblock unit where he was housed and he complained to him about being in pain.   Pl.'s Surreply at 19.

[4]   Plaintiff alleges that he will never have the full function and feeling in his arm and that his knee will never be the same.   Pl.'s Opp. at 15-16.   He alleges that he now receives medication for nerve damage sustained in his left arm from the stab wound and is scheduled to see a physiatrist for a more invasive treatment.   *Id*. at 15.   Plaintiff further alleges that he is going through physical therapy for his knee and may eventually get an MRI and surgery to alleviate the pain.   *Id*. at 16.

stage of the litigation, a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment and treatment." *Brock*, 315 F.3d at 162. Furthermore, considering Plaintiff's claims that he will never have the full function of his arm and knee and that he is looking at the possibility of more invasive nerve treatment for his arm and surgery for his knee, he also demonstrates that his medical condition significantly affects his daily activities. *Id.*; *see Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2000) ("a serious medical need exists where the failure to treat a prisoner's injury could result in further significant injury or the unnecessary and wanton infliction of pain") (internal quotation marks omitted). Plaintiff also alleges that he continues to suffer "chronic and substantial pain." *Brock*, 315 F.3d at 162. Plaintiff has alleged facts sufficient to satisfy the first prong of deliberate indifference, that the injuries to his arm and knee were sufficiently serious. *See Burton v. Lynch*, 664 F. Supp. 2d 349, 364-65 (S.D.N.Y. 2009) (allegation of elbow condition was sufficiently serious where plaintiff could not straighten elbow or full utilize arm).

Defendants argue that even assuming Plaintiff suffered from a serious condition, he fails to allege facts showing deliberate indifference by Officer Coffey, Nurse Burns, Dr. Chakravorty and Dr. Bentivegna. When the allegations are read in the light most favorable to Plaintiff, however, he has stated facts creating the inference that these Defendants acted with a "sufficiently culpable state of mind" to satisfy the second prong of the deliberate indifference analysis. Plaintiff claims that Officer Coffey was "told and shown wound of plaintiffs [sic] injury and still neglected to get plaintiff help simply because he wanted to go home on time and did not want to write a report," Pl.'s Opp. at 11; that Nurse Burns "documented the size of his wound but refused to even clean the wound on orders from Sgt. O'Connor, " Pl.'s Opp. at 20; that he was denied treatment for his injured knee by unidentified members of the medical staff because he had been in a fight, Am. Compl. ¶¶ 51-52' that Dr. Chakravorty "viewed [Plaintiff] up close in person, in the flesh and refused to treat" him, Pl.'s Surreply at 18; and that he complained about pain to Dr. Bentivegna everyday but was not provided treatment, Pl.'s Opp. at 12; Pl.'s Surreply at 19. In light of Plaintiff's claims about the severity of his injuries, his allegations suggest that the Defendants' "willfully disregarded whatever consequences might follow from failing to fully examine Plaintiff." *Burton*, 664 F. Supp. 2d at 366. Plaintiff has alleged sufficient facts at this stage to support a claim of deliberate indifference to his serious medical needs under the Eighth

11

Amendment against Defendants Coffey, Burns, Chakravorty and Bentivegna.

### c. Personal Involvement

Defendants contend that Plaintiff fails to allege facts showing that Defendants Fisher, Cuomo, Annucci, Bernstein, Martone, Kelly, Koskowski, Franco, Cunningham, Brandow, Coffey, Chakravorty and Bentivegna were personally involved in the alleged deprivations. Liability for damages in a § 1983 action may not be based on the *respondeat superior* or vicarious liability doctrines. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). In order to establish liability under § 1983, a plaintiff must allege the defendant's direct and personal involvement in the alleged constitutional depravation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991). The plaintiff must allege facts showing a connection between the defendant's alleged unconstitutional act and the injuries suffered. *See Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011).

As discussed above, Plaintiff has alleged sufficient facts that Koskowski, Coffey, Chakravorty and Bentivegna were personally involved in the alleged violations of his rights.

With respect to Fischer, Cuomo, and Annucci, Plaintiff fails to allege facts plausibly suggesting that these Defendants were aware of the alleged conduct, were grossly negligent in their supervision of the prison staff involved or directly participated in or created a policy condoning unconstitutional conduct.

As to Defendants Bernstein, Kelly, Franco, Cunningham, Brandow and Martone, Plaintiff alleges that they never responded to his letters about his lack of medical treatment. Plaintiff fails to allege plausible claims of a constitutional violation against these Defendants. The mere receipt of a letter without personally investigating or acting on the letter or grievance is insufficient to establish personal involvement. *See Gonzalez v. Sarreck*, No. 08 Civ. 3661 (RWS), 2011 WL 5051341, at * 14 (S. D.N.Y. Oct. 24, 2011); *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004). Because Plaintiff does not allege that these Defendants ever received his letters, let alone reviewed or investigated the contents, he fails to allege personal involvement. *See Harrison v. Goord*, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at * 9 (S.D.N.Y. June 9, 2009); *Young-Flynn v. Wright*, No. 05 Civ. 1488 (LAK), 2007 WL 241332, at *21 (S.D.N.Y. Jan. 26, 2007). That these high-ranking Defendants were informed of the lack

of treatment for his injuries and did nothing, if true, posits a sad state of affairs for our prison system, but is insufficient to establish their personal involvement. *See Hernandez v. Goord*, 312 F. Supp. 2d 537, 547 (S.D.N.Y. 2004) (assertion that supervisor received letters of complaint fail to state a claim); *see also Harrison*, 2009 WL 1605770, at * 9 (collecting cases).

## III.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.   Claims against Defendants Fischer, Cuomo, Annucci, Bernstein, Martone, Kelly, Franco, Cunningham and Brandow are dismissed.   With respect to the claims against Defendants Koskowski, Gotsch, O'Connor, Collins, Hess, Coffey, Burns, Chakravorty and Bentivegna for failure to protect and denial of adequate medical care, the motion is denied.   Plaintiff's motion for a preliminary injunction is denied as moot.   The Clerk of Court is instructed to close the relevant motions and remove them from my docket.

SO ORDERED.

New York, New York
December  12, 2011

HAROLD BAER, JR.
**United States District Judge**

13