```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AL-FATAH S. STEWART,                              :
                                                  :
                       Plaintiff,                 :
                                                  :
       -against-                                  :        11 Civ. 2184 (HB)
                                                  :
BRIAN FISCHER, COMMISIONER OF THE                 :        OPINION & ORDER
DEPARTMENT OF CORRECTIONS, et al.,                :
                                                  :
                       Defendants.                :
-----------------------------------------------------------X
```

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff brings claims pursuant to 42 U.S.C. § 1983 arguing that Defendants violated his rights under the Eighth Amendment. Specifically, Plaintiff urges that Chad Coffey, Ronald Collins, Timothy Gotsch, Bryan Hess, Raymond Koskowski, and Kevin O'Connor failed to protect him after he was stabbed on February 4, 2011. According to Plaintiff, this resulted in a second stabbing on February 28. And Plaintiff urges that those officers aware of his injuries along with medical personnel Robert Bentivegna, Richard Burns, and Hari Chakravorty were deliberately indifferent to his serious medical needs. Defendants now move for summary judgment. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

      This opinion takes into account not only the evidence provided in the parties' initial summary judgment briefing, but also the supplemental materials that the parties submitted on or before October 2, 2013. On December 12, 2011, I granted in part and denied in part Defendants' motion to dismiss Plaintiffs' amended complaint. *Stewart v. Fischer*, No. 11 Civ. 2184, 2011 WL 6153084 (S.D.N.Y. Dec. 12, 2011). Familiarity with that opinion is assumed.

### A. The Assaults on Plaintiff

      I turn now to the parties' substantive dispute, viewing as I must all facts in the light most favorable to Plaintiff. This saga began on February 4, 2011 when Plaintiff claims he was stabbed in his left forearm while in state custody at Green Haven Correctional Facility. According to Plaintiff, Officer Hess, who was stationed on the roof overlooking the yard, saw the stabbing

1

itself and shouted down to the inmates to "break it up." (Stewart Decl. ¶¶ 6, 9.) Hess denies witnessing any altercation. After leaving the yard, Plaintiff then told Officer Coffey that he had been "hit"—meaning he had been stabbed. (Stewart Decl. ¶ 11.) But all Coffey did was direct Plaintiff to return to his cell, adding that "if he had to do paperwork[,] [Plaintiff] would really get hurt." (*Id.*) Plaintiff claims that his fear of retribution from Coffey prevented him from complaining further to Green Haven personnel. And neither Hess nor Coffey reported a stabbing that day.

Two days later on February 6, Sergeant O'Connor asked Plaintiff about his injuries. He also escorted Plaintiff to the clinic. Plaintiff then told O'Connor that another inmate had stabbed him. Plaintiff claims O'Connor refused him protective custody unless he identified his assailant. Plaintiff was unable to do so. O'Connor also prevented Nurse Burns from properly treating Plaintiff's injuries. Instead, Nurse Burns noted only that Plaintiff's wounds "looked like a cigarette burn." (Stewart Decl. ¶¶ 31–32.) And Plaintiff's medical records following Burns' examination reflect his determination that Plaintiff suffered from "minor" burn wounds that appeared to be a "few days old." (Kim Decl. Ex. G.) On February 10, Plaintiff then wrote to Chakravorty, his primary prison physician, asking for immediate treatment for a "serious injury" sustained on February 4. (Stewart Decl. ¶ 39 & Ex. A.) Plaintiff did not see Chakravorty until the next month.

Following his conversation with Plaintiff, O'Connor instead of attending to his wound issued Plaintiff a misbehavior report, ordered him to be detained in his cell pending a disciplinary hearing, and noted in the report that Plaintiff had injured himself while playing "chicken" with another inmate. (Kim Decl. Ex. E.) O'Connor's report also described the possibility that inmates had been fighting with "homemade knives." (*Id.*) And on February 12, Plaintiff attended a hearing before Lieutenant Gotsch. During that hearing, Plaintiff admitted that he had injured himself playing "chicken" using cigarettes. He also denied being involved in a knife fight. But Plaintiff now urges that these statements were lies. According to Plaintiff, the door to the hearing room was ajar while he spoke with Gotsch. This permitted other inmates to eavesdrop on their conversation. (Stewart Decl. ¶ 41.) And because other inmates might view Plaintiff as a snitch if they overheard him mention the stabbing, Plaintiff fabricated his story.

Following the hearing, Gotsch directed Plaintiff to be confined for thirty days in "keeplock." According to prison records, Deputy Superintendent Koskowski was responsible for

2

reviewing this determination. But none of the misbehavior reports or medical records that Koskowski would have reviewed indicated that Plaintiff had been involved in a knife fight. (Kim Decl. Ex. I.) And Plaintiff offers no evidence that Koskowski otherwise knew of the assault on February 4 until after the second stabbing.

Then, on the evening of February 28, while Plaintiff was in keeplock, Officer Collins remotely opened Plaintiff's cell door. (Collins Decl. ¶ 9.) According to Collins, Plaintiff was scheduled to be escorted to the clinic for his medication that evening. (*Id.*) Officer Hess claims that Plaintiff himself requested medication. (Hess Decl. ¶ 8; Kim Decl. Ex. N.) But soon thereafter, an inmate stabbed Plaintiff again "with an ice-pick type weapon." (Stewart Decl. ¶ 48.) Medical records following that attack confirmed that Plaintiff received multiple puncture wounds. (Kim Decl. Ex. O, at STEWART 100.) After receiving treatment for his injuries, Plaintiff was placed in involuntary protective custody.

**B. Plaintiff's First Grievances**

According to Plaintiff, he then filed two written grievances on February 28. The first grievance complained both about the circumstances leading to Plaintiff's second stabbing as well as the medical treatment he received for both that stabbing as well as a knee injury. Plaintiff also described the February 4 stabbing and his placement in keeplock "for not reporting a[n] injury." (Stewart Decl. Ex. B.) He further complained that Nurse Burns failed to treat properly his initial wounds. (*Id.*) But this grievance was not assigned a tracking number.

Plaintiff's second February 28 grievance—numbered 71274 and addressed to the Inmate Grievance Resolution Committee ("IGRC")—again described the February 4 stabbing. Plaintiff also asked that the prison place metal detectors in the yard to prevent such attacks. (Kim Decl. Ex. S, at 30.) And on March 4, Plaintiff also raised complaints with regard to his two stabbings and the "breach of security." These concerns were voiced in additional letters to the superintendent and to the IGRC. (Stewart Decl. Ex. D; Kim Decl. Ex. S, at 34–35.) Plaintiff urged that he had not requested medication on February 28 and thus there was no reason for his cell door to be opened that day. (Kim Decl. Ex. S, at 34.) In response to these complaints, the IGRC forwarded Plaintiff's March 4 letter to Koskowski, noting that "an inmate-on-inmate assault is not within the purview of . . . the IGRC." (Kim Decl. Ex. S, at 36.) Prison officials filed this response using the same grievance number as Plaintiff's February 28 grievance: 71274. (*Id.*; *see also* Kim Decl. Ex. T.)

3

Plaintiff completed the appeals process for grievance 71274 by July 27, 2011. In response, the Central Office Review Committee ("CORC") investigated Plaintiff's failure to report his assault and observed that Sergeant O'Connor had issued a misbehavior report for inflicting self-harm. (Kim Decl. Ex. S, at 38.) CORC also conducted an investigation into the identity of his assailant. But they failed to identify him. (*Id.*)

## C. Plaintiff's Medical Care and Related Grievances

Beginning in early March, Plaintiff complained on multiple occasions to Dr. Bentivegna about the stab wounds to his arm. Plaintiff also complained about his knee pain. Over the course of the next few days, Bentivegna provided Plaintiff with band-aids and painkillers. Bentivegna also ordered an x-ray for Plaintiff's knee in late April. And at Plaintiff's request on May 2, Bentivegna referred Plaintiff to another physician.

Yet on March 2, Plaintiff complained about his treatment from Bentivegna to the IGRC. (Kim Decl. Ex. S, at 11–12.) Plaintiff also noted that "[his] arm [hadn't] been tended to since the [February 4] incident." (*Id.* at 12.) This grievance was numbered 71137. In a report following this grievance, prison officials described Plaintiff's injuries as "small stab wounds" and "a right knee sprain/strain." (*Id.* at 14.) On April 8, the IGRC concluded in response to this grievance that while a "medical determination [was] beyond the purview of the IGRC," Plaintiff should be treated. Nevertheless, on April 13, Plaintiff appealed this determination. (Stewart Decl. Ex. R.)

On March 9, Dr. Chakravorty saw Plaintiff. Yet despite Plaintiff telling him he had been stabbed and that his arm was "numb," Chakravorty did not provide immediate treatment, rather Chakravorty advised Plaintiff to wait. Plaintiff also complained of knee pain from falling during the February 28 altercation. But Chakravorty advised Plaintiff only not to strain his knee again until it healed. Plaintiff complained about this treatment that day to the IGRC and the superintendent. (Stewart Decl. Ex. H.)

On April 30, Plaintiff again complained to the IGRC that he "still ha[d] not received any treatment" for either his "stab wound of 2-4-11" or his "knee injury of 2-28-11" following the resolution of his March 2 grievance, numbered 71137 as noted above. (Kim Decl. Ex. S, at 42.) Plaintiff's April 30 complaint was separately numbered 71405. IGRC eventually noted that grievance 71137 and grievance 71405 "are regarding the same issue" and were "being consolidated . . . because [grievance 71405] [was] currently out for investigation." (Berkman

4

Decl. Ex. G, at IGP-00053.)  Nevertheless, CORC concluded that there was insufficient evidence "to substantiate malfeasance by staff."  (Kim Decl. Ex. S, at 47; *see also id.* Ex. T.)

An MRI of Plaintiff's knee in December 2011 revealed that he suffered from cysts, fluid collection, and a small joint effusion.  And nearly one year after his appeals and following multiple complaints to various public officials about his treatment, Plaintiff finally received surgery on his left forearm on April 12, 2012.  Doctors determined that Plaintiff had suffered an ulnar nerve injury.  His operating physician believed an object "that caused both entry and exit wounds in the forearm" had caused Plaintiff's injury.  (Callahan Dep. 40:5–10.)  That physician also described Plaintiff's arm injury as a "through-and-through gunshot wound."  (Kim Decl. Ex. R, at CALLAHAN-004.)

## DISCUSSION

"Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011) (quoting *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 84 (2d Cir. 2004)). In making that determination, "[a]ll reasonable inferences must be construed in the nonmoving party's favor, and if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Id.* (second alteration in original) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)).

### A. Failure to Protect

Eighth Amendment failure-to-protect claims require that an inmate show "that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and that (2) the defendants acted with 'a sufficiently culpable state of mind.'" *Warren v. Goord*, 579 F. Supp. 2d 488, 494 (S.D.N.Y. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Sufficient culpability is established where officials act with "deliberate indifference to inmate health or safety." *Id.* at 494–95 (quoting *Farmer*, 511 U.S. at 834).  And a prison official acts with deliberate indifference where "(1) he 'knows that inmates face a substantial risk of serious harm'; and (2) 'disregards that risk by failing to take reasonable measure to abate it.'" *Id.* (quoting *Farmer*, 511 U.S. at 847).

First, Defendants do not seriously contest that the conditions of Plaintiff's incarceration placed him at a substantial risk of harm.  Indeed, Plaintiff's February 28 stabbing conclusively

5

establishes that Plaintiff faced serious risk. *See id.* at 491, 494 (objective prong of Eighth Amendment claim established where inmate attacked plaintiff with razor blade). I turn then to the officers' culpability in failing to take additional measures to protect Plaintiff following the February 4 assault.

In that regard, Plaintiff claims that Officer Hess saw the stabbing in the yard and that he told Officer Coffey directly that he had been stabbed and feared for his life. Plaintiff further claims he told Sergeant O'Connor that he had been stabbed. Yet according to Plaintiff, none of these officers took steps to protect Plaintiff. For his part, Hess denies witnessing any altercation in the yard from his perch on the roof of the prison. Coffey and O'Connor similarly deny that Plaintiff told them he had been stabbed. These disputes present credibility issues best left for the jury to decide. If in fact Hess, Coffey, and O'Connor took no further action after learning that a prisoner had been stabbed, a jury could find deliberate indifference. Further, whether these officials' failure to notify anyone of this event was a proximate cause of Plaintiff's subsequent injury is also a factual question that cannot be decided on summary judgment. *See Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 112 (E.D.N.Y. 2011) ("[D]efendants may be held liable under § 1983 if . . . their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights . . . ." (quoting *Ortiz v. Goord*, 276 F. App'x 97, 98 (2d Cir. 2008))); *Martin v. City of N.Y.*, 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) ("[I]ssues of proximate cause are normally questions of fact for the jury to decide, unless the court concludes that a reasonable jury could reach only one conclusion." (quoting *Packer v. Skid Roe, Inc.*, 938 F. Supp. 193, 196 (S.D.N.Y. 1996))).

But there is insufficient evidence to find that Lieutenant Gotsch, Deputy Superintendent Koskowski, or Officer Collins knew of the February 4 assault and thus were required to take action. The records that Koskowski was responsible for reviewing do not demonstrate that a stabbing had occurred. Instead, these records only corroborate the story, whether true or not, that Plaintiff injured himself playing "chicken" with cigarettes. And lastly, there is no evidence that Collins knew of the February 4 assault. Thus, whether or not Plaintiff requested medication on the evening of February 28, the evidence in the record before me at best supports a conclusion that Collins opened Plaintiff's cell door when he should not have. Such behavior falls below the deliberate indifference standard required to support a failure-to-protect claim. *See Fernandez v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010)

("Mere negligence by a prison officer does not establish a claim for 'deliberate indifference' to prisoner's safety." (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996))). Because no reasonable juror could find the requisite degree of culpability, summary judgment as to Gotsch, Koskowski, and Collins is granted.

**B. Deliberate Indifference to Serious Medical Needs**

I turn next to Plaintiff's claims that Defendants were deliberately indifferent to his medical needs. To succeed here, "a prisoner must show that: (1) as an objective matter, the alleged deprivation is 'sufficiently serious'; and (2) as a subjective matter, that the 'charged official [acted] with a sufficiently culpable state of mind.'" *Fernandez*, 2010 WL 1222017, at *4 (alteration in original) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Defendants dispute both the objective and subjective prongs.

To meet the objective prong, the deprivation of medical care "must present a 'condition of urgency, one that may produce death, degeneration, or extreme pain,' or possibly 'result in further significant injury or the unnecessary and wanton infliction of pain.'" *Burton v. Lynch*, 664 F. Supp. 2d 349, 363–64 (S.D.N.Y. 2009) (citation omitted) (quoting *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003)). Sufficient evidence exists for a jury to conclude that Plaintiff was stabbed on February 4. And the jury could conclude that this wound resulted, after a long period without proper treatment, in surgery for an ulnar nerve condition. This outcome is "highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187. And according to Plaintiff's expert, the delay in treating Plaintiff's ulnar nerve injury may compromise his recovery. (Cipolla Decl. Ex. M, at 6.) Thus, a jury could conclude that Plaintiff's February 4 stab wound was objectively serious.

Similarly, there is sufficient evidence for a jury to find that prison officials were deliberately indifferent to his condition. According to Plaintiff, he told Officer Hess, Officer Coffey, Sergeant O'Connor, and Nurse Burns that he had been stabbed. Yet none of these individuals assisted Plaintiff in obtaining treatment. Indeed, Plaintiff claims that O'Connor and Burns deliberately refused to provide adequate treatment because Plaintiff did not identify his assailant when he was attacked on February 4. If a jury credits Plaintiff's testimony, both O'Connor and Burns then falsified reports of the incident. Such behavior would demonstrate that these officials were "aware that Plaintiff had a serious medical condition and willfully

7

disregarded whatever consequences might follow from failing to fully examine Plaintiff." *Burton*, 664 F. Supp. 2d at 366.  Summary judgment therefore is unwarranted.

But Bentivegna and Chakravorty stand on different footing.  These doctors examined Plaintiff and apparently concluded that significant medical treatment was not required.  Although Plaintiff purportedly told both doctors that he had been stabbed and about his knee injury, and while disheartening if true, "not every lapse in prison medical care will rise to the level of a constitutional violation."  *Smith*, 316 F.3d at 184.  Because "the Eighth Amendment is not a vehicle for bringing medical malpractice claims," Plaintiff must demonstrate more than "an inadvertent failure to provide adequate medical care."  *Id.*

Yet here, even if Plaintiff's knee injury were also objectively serious, there is no evidence that demonstrates Bentivegna and Chakravorty knew that Plaintiff required greater care than he was receiving.  Following Plaintiff's complaints, Bentivegna ordered x-rays for Plaintiff's knee and provided band-aids and painkillers.  And ultimately, Bentivegna acceded to Plaintiff's request to refer him to another doctor.  Likewise, when Chakravorty examined Plaintiff, he concluded—while with hindsight it is hard to believe—that Plaintiff's wounds did not require immediate intervention.  The fact is that there is no evidence that either Bentivegna or Chakravorty deliberately disregarded Plaintiff's condition.  At worst, these doctors were negligent.  But because negligence is insufficient to sustain Plaintiff's claims, summary judgment as to these two doctors is granted.  *See Colon v. City of N.Y.*, No. 08 Civ. 3142, 2009 WL 1424169, at *7 (S.D.N.Y. May 21, 2009) (to establish deliberate indifference claim "a defendant's actions must be more than mere negligence or medical malpractice").

## C. Exhaustion Under the PLRA

Having determined that genuine issues of material fact remain only for Defendants Hess, Coffey, O'Connor, and Burns, I turn next to whether Plaintiff exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.* This inquiry "requires that [the Court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures."  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).  Here, New York's Department of Corrections and Community Supervision provides for a three-step grievance process.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.  First, a prisoner must file a grievance with the IGRC.  § 701.5(a)(1); *Espinal*, 558 F.3d at 125.  If the IGRC renders an adverse decision, the prisoner may appeal to

the superintendent of the facility. § 701.5(c)(1); *Espinal*, 558 F.3d at 125. And if the superintendent also denies the grievance, the prisoner may escalate his appeal to CORC. § 701.5(d)(1); *Espinal*, 558 F.3d at 125.

As noted above, Plaintiff here filed numerous grievances. Exhaustion thus turns on whether those grievances were both fully appealed and sufficiently specific to allow Plaintiff to bring his claims here. In that regard, "a New York state prisoner is not required to name responsible parties in a grievance in order to exhaust administrative remedies." *Espinal*, 558 F.3d at 126. So long as a prisoner utilizes the grievance process, "the question for the Court is 'whether [the] plaintiff's grievance sufficiently alerted prison officials that he was alleging some wrongdoing beyond' that alleged against the individual or individuals specifically named in the grievance." *Hilbert v. Fischer*, No. 12 Civ. 3843, 2013 WL 4774731, at *4 (S.D.N.Y. Sept. 5, 2013) (quoting *Percinthe v. Julien*, No. 08 Civ. 893, 2009 WL 2223070, at *4 (S.D.N.Y. July 24, 2009)). And even if a prisoner fails explicitly to mention the claim or files an untimely grievance, a claim may be exhausted "as long as the claim was specifically addressed in the prison's denial of the grievance and, hence, was properly investigated." *Percinthe*, 2009 WL 2223070, at *4 (citing *Espinal*, 558 F.3d at 128); *see also Hill*, 657 F.3d at 125 ("[T]he PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority.").

I turn first to Plaintiff's three numbered grievances: (1) grievance 71274, filed February 28, 2011; (2) grievance 71137, filed March 2, 2011; and (3) grievance 71405, filed April 30, 2011. As noted above, the IGRC expressly consolidated grievance 71137 with grievance 71405. And the evidence shows that Plaintiff's March 4 letter to the IGRC complaining of security breaches following the opening of Plaintiff's cell door was given the same grievance number as the February 28 grievance. Thus, that letter was consolidated with grievance 71274. And Plaintiff appealed through all three levels of internal review for both grievance 71405 and grievance 71274. At no point did any reviewing body reject Plaintiff's appeals based on timeliness concerns. Accordingly, I find all three of these grievances, as well as the March 4 letter, were fully exhausted in accordance with the PLRA. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 492 (S.D.N.Y. 2008) (all grievances exhausted due to consolidation prior to CORC's final decision). Plaintiff also urges that his additional February 28 complaint should have been consolidated with grievances 71137 and 71405 pursuant to prison procedures. But Plaintiff only

9

speculates that such consolidation actually occurred.  Without more, he fails to show exhaustion of the unnumbered February 28 letter.  *See Thomas v. Connolly*, No. 10 Civ. 2401, 2012 WL 3758457, at *10 (S.D.N.Y. Aug. 30, 2012).

       I next examine the substance of Plaintiff's exhausted grievances and the scope of the prison's investigations into those grievances.  First, grievance 71274 was sufficient to alert prison officials that Plaintiff alleged wrongdoing against O'Connor.  Indeed, CORC commented directly upon O'Connor's misbehavior report and concluded that Plaintiff "did not report his alleged assault."  (Kim Decl. Ex. S, at 38.)  Plaintiff's grievance was thus sufficient to alert prison officials that Plaintiff viewed this report as false and that O'Connor may have failed to take appropriate action.  *See Percinthe*, 2009 WL 2223070, at *4 (grievance exhausted where "claim was specifically addressed in the prison's denial of the grievance").

       And not only was Hess stationed on the roof overlooking Plaintiff's first stabbing, but he was also the officer who caused Collins to open Plaintiff's cell door prior to the second stabbing. (Hess Decl. ¶¶ 3, 8.)  In his March 4 grievance, Plaintiff complained specifically about his cell door being opened in violation of prison rules, placing prison officials on notice of a failure-to-protect claim against Hess.  (Kim Decl. Ex. S, at 34.)  And a jury could conclude that CORC's investigations into the first stabbing would also have included speaking with Hess.  *See Brown v. Austin*, No. 05 Civ. 9443, 2009 WL 613316, at *4 (S.D.N.Y. Mar. 4, 2009) (noting that "date, time and location" is sufficient because "[t]he point is that prison officials had the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident" (quoting *Espinal*, 554 F.3d at 226)).  Thus, prison officials were on notice of Hess's involvement.

       Finally, in addition to the investigation following grievance 71274, Plaintiff further claims that Coffey's threats prevented him from filing a grievance.  Thus, not only was the prison placed on notice of Plaintiff's failure-to-protect claim against Coffey, but such allegations are also sufficient at summary judgment to estop Coffey from asserting a nonexhaustion defense. *See Hepworth v. Suffolk Cnty.*, No 02. Civ. 6473, 2006 WL 2844408, at *7 (E.D.N.Y. Sept. 29, 2006) (citing *McCullough v. T. Burroughs*, No. 04 Civ. 3216, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005)).  Accordingly, Defendants' exhaustion defense fails as to all three of these officials.

10

And turning next to Plaintiff's medical grievances, grievance 71137 and grievance 71405 indicated that Plaintiff had complained that he had not received any medical treatment following the February 4 stabbing. But CORC concluded that there had been no malfeasance on the part of prison staff. Thus, the prison was on notice that Plaintiff was complaining about the medical care he received from all individuals with whom he interacted following the February 4 incident, including Burns, O'Connor, Hess, and Coffey. Thus, Plaintiff also exhausted his medical claims.

### D. Qualified Immunity

Finally, Defendants urge that they are entitled to qualified immunity. Qualified immunity extends to government actors "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 432–33 (2d Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). And indeed, "[t]here is undoubtedly a clearly established right to be free from deliberate indifference to serious medical needs." *Hardy v. City of N.Y.*, 732 F. Supp. 2d 112, 138 (E.D.N.Y. 2010) (citing *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998)). And "[t]here can be no doubt that inmates have a clearly established right to remain incarcerated in reasonably safe conditions." *See, e.g.*, *Randle v. Alexander*, No. 10 Civ. 9235, 2013 WL 2358601, at *15 (S.D.N.Y. May 30, 2013) (citing *Williams v. Carbello*, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009)).

Defendants' descriptions of their own conduct is subject to numerous factual disputes, as explained above. Defendants also urge that there is no constitutional right requiring prison official to impose involuntary protective custody on little notice of a threat or prohibiting "a prudent and conservative course of medical treatment." But "courts need not have ruled in favor of a prisoner under precisely the same factual circumstances in order for the right to be clearly established." *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). And if Plaintiff's version of the facts is true, the remaining Defendants failed to take any steps in response to his assault and failed to provide any medical care whatsoever. These facts would not merit qualified immunity.

11

## CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Timothy Gotsch, Raymond Koskowski, Ronald Collins, Robert Bentivegna, and Hari Chakravorty. The motion is DENIED as to Bryan Hess, Chad Coffey, Kevin O'Connor, and Richard Burns. The Clerk of Court is instructed to close this motion and remove it from my docket.

SO ORDERED.

Date: 10/15/13
New York, New York

_____
HAROLD BAER, JR.
**United States District Judge**